## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, et al., | Case No. 8:25-cv-02486 |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THE PROPOSITION THAT A THREE-JUDGE PANEL IS REQUIRED IN THIS CASE** |
| v. | |
| HOWARD W. LUTNICK, et al., | |
| Defendants. | |

Plaintiffs University of South Florida College Republicans, Michael Fu-sella, Pinellas County Young Republicans, Parisa Mousavi, and the Hon. Byron Donalds, by and through undersigned counsel, and in response to the Court's request for supplemental briefing, *see* ECF No. 38, respectfully submit this memorandum demonstrating why a three-judge panel is mandatory here and was properly convened.

**I.    Congress requires a three-judge panel to resolve any action brought under Pub. L. No. 105-119, § 209 (1997), and this case was brought under that section.**

Section 209 provides that "[a]ny action brought under this section shall be heard and determined by a district court of three judges in accordance with section 2284 of title 28, United States Code." Pub. L. No. 105-119, § 209(e)(1).

It is undisputed that this case is brought under the cause of action created by Congress in § 209. *See* ECF No. 43 ("SAC") ¶ 15. Thus, this action must be heard by a three-judge panel. The Court has no discretion to proceed without a panel.

Section 209 provides a statutory right of action for (1) "Any person aggrieved by the use of any statistical method in violation of the Constitution or any provision of law (other than this Act), in connection with the 2000 or any later decennial census, to determine the population for purposes of the apportionment or redistricting of Members in Congress." Pub. L. No. 105-119, § 209(b). "[A]n aggrieved person" includes "(1) any resident of a State whose congressional representation or district could be changed as a result of the use of a statistical method challenged in the civil action; (2) any Representative or Senator in Congress; and (3) either House of Congress." *Id.* § 209(d).

All Plaintiffs are "aggrieved persons." University of South Florida College Republicans; its President, Michael Fusella; Pinellas County Young Republicans; and its President, Parisa Mousavi ("Florida Plaintiffs") specifically invoked Section 209 in their complaint. SAC ¶ 15. They are all residents of Florida. *Id.* ¶¶ 8–11. They plausibly allege their congressional representation has been changed. *Id.* ¶¶ 1, 4, 17, 18, 22, 72, 78, 81-82. They further plausibly allege that this change was a result of the use of the two statistical methods they challenge. *Id.* The Florida Plaintiffs, therefore, qualify under § 209(d)(1).

The Hon. Byron Donalds is a Member of Congress and therefore qualifies under § 209(d)(2). *Id.* ¶ 12.

The Plaintiffs plausibly allege that the Group Quarters Method and Differential Privacy used statistical procedures to add or subtract counts from the enumeration in violation of Section 209. *See* § 209(h)(1); SAC ¶¶ 37–53, 54–73. The Plaintiffs' pleadings also address all other elements of a § 209 cause of action that: the use of these statistical methods in the 2020 census violated the Constitution and other provisions of federal law, SAC ¶¶ 1, 85–111, and the statistical methods were used to determine the population for purposes of congressional apportionment and redistricting. *Id.* ¶¶ 4, 17, 18, 22, 72, 78, 81-82.

Section 2284 provides in part that: "[a] district court of three judges *shall* be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). Upon request by a party, "the judge to whom the request is presented shall, unless he determines that three judges are not required, [take steps to convene the panel]." § 2284(b)(1).

Courts have consistently found that cases brought under § 209 require the convening of a three-judge panel. *See Common Cause v. Trump*, 2020 WL 9720064, at *1 (D.D.C. Aug. 20, 2025) (finding that convening a three-judge panel for a § 209 claim was "also 'otherwise required by Act of Congress' within

the meaning of 28 U.S.C. § 2284(a)"); *Alabama v. U.S. Dep't of Com.* ("*Alabama II*"), 2021 WL 1171873, at * 2–3 (M.D. Ala. Mar. 26, 2021) (citing *Utah v. Evans*, 536 U.S. 452 (2002), for its decision that the Court "must accordingly" convene a three-panel "because the Plaintiffs have sufficiently alleged an action covered by § 209 and 28 U.S.C. § 2284"); *see also Glavin v. Clinton*, 19 F. Supp. 2d 543 (E.D. Va. 1998) (§ 209 case heard by three-judge panel).[1]

Before 2015, some court decisions interpreted Section 2284(b)(1)'s phrase "unless he determines that three judges are not required" as conferring discretion on the judge to whom the case had been assigned to deny a request for a three-judge panel. However, in 2015, the Supreme Court squarely rejected this approach, holding that "§ 2284(a) admits of no exception" because "the mandatory 'shall' normally creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (cleaned up). The Court explained that "[s]ection 2284(b)(1) merely clarifies that a district judge need not unthinkingly initiate the procedures to convene a three-judge court without first

---

[1] Counsel is aware of only one Section 209 case in which a request for a three-judge panel was denied. *Van Cleve v. Ross*, 2021 WL 8946334 (S. D. Fla. Oct. 12, 2021). However, that three-judge panel request was denied because the case did not involve "a challenge to an action or a statistical method, respectively, affecting the constitutionality of the apportionment or[] redistricting of congressional districts," but rather it merely "challenge[d] the standards for collecting racial data by federal agencies that may indirectly impact representation of specific populations sometime in the future." *Id.* at *2. Because the Plaintiffs challenge statistical methods that directly affect appointment and redistricting, *Van Cleve* has no applicability here.

examining the allegations in the complaint .... all the district judge must 'determin[e]' is whether the 'request for three judges' is made in a case covered by § 2284(a)—no more, no less." *Id.* at 44 (quoting 28 U.S.C. § 2284).

Because "Plaintiffs have sufficiently alleged an action covered by § 209 and 28 U.S.C. § 2284," the District Court is required to convene a three-judge panel. *Alabama II*, 2021 WL 1171873, at * 2–3 (citing *Utah*, 536 U.S. 452).

### A.    The three-judge panel has been properly convened in accordance with 28 U.S.C. § 2284.

Under 28 U.S.C. § 2284(b), the first step in any action required to be heard by a three-judge panel is to "fil[e] a request for three judges." *Id.* In accordance with that statutory directive, Plaintiffs moved to convene a three-judge panel on October 7, 2025, ECF No. 22, less than two and a half weeks after the case was assigned to a district judge on September 17. ECF No. 4.

Under § 2284(b)(1), upon the filing of a request for three judges, "the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit," who will then designate two additional judges, including at least one circuit judge. 28 U.S.C. § 2284(b)(1). This Court has complied with these requirements, and the three-judge panel was properly convened. *See* ECF Nos. 25, 26.

## II.    The three-judge panel request here is consistent with, or distinguishable from, the caselaw specified in the Court's Endorsed Order, ECF No. 38, requesting this supplementary briefing.

In its Order for additional briefing, this Court directed the parties to five

cases. Those cases all support a three-judge panel here.

**A.    *Common Cause* required the convening of a three-judge panel for the same reasons this case does.**

*Common Cause v. Trump* strongly supports Plaintiffs' request for a three-judge panel based on the statutory mandate in Section 209. *Common Cause v. Trump*, 2020 WL 9720064 (D.D.C. Aug. 20, 2020). In that case, the plaintiffs challenged President Trump's memorandum directing the exclusion of illegal aliens from the apportionment base, alleging it violated 13 U.S.C. § 195 by requiring the use of statistical sampling. *Id.* at *1. The district court granted the motion for a three-judge panel because "Congress has mandated that claims alleging unlawful use of statistical sampling in the census' shall be heard and determined by a district court of three judges in accordance with section 2284 of title 28, United States Code.'" *Id.* at *1 (quoting Pub. L. 105-119, § 209(b), (e)(1)). The *Common Cause* court recognized that convening a three-judge panel was "otherwise required by Act of Congress within the meaning of 28 U.S.C. § 2284(a)." *Id.* (quoting 28 U.S.C. § 2284(a)). The present case invokes precisely the same statutory mandate.

Plaintiffs challenge the use of the Group Quarters Method and Differential Privacy as prohibited statistical methods under Section 195 and Section 209, alleging that these methodologies unlawfully added and subtracted counts through statistical inference in violation of federal law. Just as in *Common*

*Cause*, Congress has statutorily mandated that such challenges "shall be heard" by a three-judge panel—the requirement is not discretionary, and it applies regardless of whether the court ultimately agrees with plaintiffs' characterization of the challenged methods as statistical sampling.

*Common Cause* also granted the three-judge panel request on a separate ground that also applies here. The court held that plaintiffs' claim that the challenged memorandum "violated Art. I, § 2, cl. 3 of the U.S. Constitution and Section 2 of the Fourteenth Amendment" was "squarely a challenge to 'the constitutionality of the apportionment of congressional districts'" requiring a three-judge panel under § 2284(a). *Id*. (quoting 28 U.S.C. § 2284(a)). The present case similarly challenges the constitutionality of congressional apportionment on multiple constitutional grounds. Plaintiffs allege that the Group Quarters Method and Differential Privacy violated the Actual Enumeration Clause of Article I, Section 2, and the Fourteenth Amendment's requirement to count "the whole number of persons in each State." SAC ¶¶ 31, 86-97. These constitutional challenges directly attack the validity of the apportionment that resulted from the 2020 Census—the actual allocation of congressional seats among states and the drawing of district boundaries based on census data that Plaintiffs contend was unlawfully compiled. Under *Common Cause's* reasoning, such a facial constitutional challenge to apportionment squarely triggers Section 2284(a)'s three-judge requirement. The two independent bases for a

three-judge panel identified in *Common Cause*—the statutory mandate in Section 209 and the constitutional apportionment challenge under Section 2284(a)—both apply fully to this case and compel the designation of a three-judge panel.

### B.    The *Alabama* cases support the three-judge panel request.

Three of the five cases listed in the Court's order were filed by the State of Alabama. All of them support the propriety of a three-judge panel here.

### 1.    *Alabama I* is distinguishable on the law and the facts, and its reasoning supports a three-judge panel here.

*Alabama v. U.S. Dep't of Commerce* ("*Alabama I*") held that plaintiffs' challenge to the Census Bureau's "Residence Rule"—which counted aliens at their U.S. lodgings—was "not a challenge to the actual division of congressional districts but rather a challenge to a practice that might affect a future division of districts." 493 F. Supp. 3d 1123, 1128 (N.D. Ala. 2020). The court reasoned the challenged rule was merely "a census practice which will produce data on which the apportionment... will be based, not any state action reapportioning congressional districts." *Id.* (cleaned up).

*Alabama I* is thus distinguishable because the present case is grounded in a statute that expressly *requires* a three-judge court. Section 209's command is mandatory, not discretionary—Congress explicitly required a three-judge panel for challenges to the use of statistical methods in the census, and Section 2284 requires a three-judge panel whenever one has been required by statute.

The court's reasoning in *Alabama I*, on the other hand, was based on an analysis of another prong from Section 2284(a): about whether the case involved "the apportionment of congressional districts." *Alabama I*, 493 F. Supp. 3d at 1126 (noting the court's decision was about "whether Plaintiffs' allegation that the Residence Rule violates the Constitution is a 'challenge to ... the apportionment of congressional districts'" (quoting 28 U.S.C. § 2284)).

Furthermore, even if the constitution of a three judge panel here depended on Section 2284(a)'s "apportionment of congressional districts" prong, *Alabama I* would still not apply. Here, by contrast, Plaintiffs challenge the *completed* 2020 Census report that has already been used to apportion congressional seats and draw district lines. This is not a challenge to preliminary census practices that "might" affect future apportionment; it is a direct challenge to the apportionment itself as reflected in the final census report delivered to Congress and adopted by states for redistricting. The apportionment has occurred, congressional districts have been drawn based on the challenged report, and Plaintiffs seek relief from that completed apportionment. Under *Alabama I's* own reasoning, challenges to "the final product—the apportionment—and not merely... an ingredient—the census—used in the product's manufacture" fall squarely within Section 2284(a)'s requirement for a three-judge panel. *Id.* at 1128 (quoting *City of Philadelphia v. Klutznick*, 503 F. Supp. 657, 658 (E.D. Pa. 1980)). Because Plaintiffs challenge the constitutional and

statutory validity of the apportionment itself—the actual division of congressional seats among states and the drawing of district boundaries based on an unlawfully conducted census—this case presents precisely the type of apportionment challenge that Section 2284(a) requires be heard by a three-judge court even if a statute did not require it.

### 2. *Alabama II* supports a three-judge panel here.

*Alabama v. Department of Commerce* ("*Alabama II*") directly supports the constitution of a three-judge panel in this case. 2021 WL 1171873. In *Alabama II*, a district court granted the plaintiffs' motion for a three-judge panel in a challenge to the Bureau's use of Differential Privacy in the 2020 Census. The court recognized that Section 209(e)(1) mandates a three-judge panel whenever an aggrieved person challenges "the use of any statistical method in violation of the Constitution or any provision of law... in connection with the 2000 census or any later decennial census, to determine the population for purposes of the apportionment or redistricting of Members in Congress." *Id.* at *1 (quoting § 209(b)). The court noted that the "scope of" the "initial inquiry as to a three-judge panel is limited"—a district judge need only determine whether the allegations in the complaint fall within Section 2284(a)'s coverage; the judge need not resolve factual disputes about whether Differential Privacy actually constitutes an impermissible statistical method. *Id.* at *2. *Alabama II* concluded that because plaintiffs had "sufficiently alleged an action covered by

10

§ 209 and 28 U.S.C. § 2284," the three-judge panel was mandatory. *Id.* at *3.

The present case is materially identical: Plaintiffs here, like those in *Alabama II*, challenge the Bureau's use of Differential Privacy *and* the Group Quarters Method in the 2020 Census as violations of the Constitution and Section 209. Plaintiffs are "aggrieved persons" within the statutory definition, and their allegations squarely implicate Section 209(e)(1)'s mandatory three-judge requirement. Under *Alabama II's* reasoning, this Court must grant Plaintiffs' request and designate a three-judge panel to adjudicate their claims.

### 3. *Alabama III* did not address the propriety of three-judge panels and, to the extent it is applicable on the merits, is distinguishable on the law and the facts.

*Alabama v. Department of Commerce* ("*Alabama III*") is also readily distinguishable because the court's ruling was not about whether a three-judge panel was required—indeed, the decision itself was issued *by* a three-judge panel—but rather addressed the plaintiffs' Section 209 claims on the basis of justiciability and standing. 546 F. Supp. 3d 1057 (M.D. Ala. 2021).

Furthermore, the *Alabama III* court's reasoning on the merits is distinguishable on the law and the facts. *Alabama III* conducted a careful textual analysis of Section 209(d), which defines an "aggrieved person" as including "(1) any resident of a State whose congressional representation or district could be changed...; (2) any Representative or Senator in Congress; and (3) either House of Congress." *Id.* at 1067–68. The court concluded that "[c]onspicuously

missing from this section is any express mention of states" and that "the background presumption... is that the word 'person' does not include the sovereign." *Id.* at 1067–68. Because Alabama itself—a sovereign State—was bringing the Section 209 claim, the court found it lacked a cause of action. *Id.*

The *Alabama III* court also dismissed the individual plaintiffs (Alabama voters) on ripeness and standing grounds, holding that their alleged harms were "speculative" and "premature" because the census had not yet been finalized and apportionment had not yet been completed. *Id.* at 1069–74. The court reasoned that any injury to individual voters from Differential Privacy was too uncertain and distant to constitute a justiciable case or controversy. *Id.* That analysis has no application here. The 2020 Census is now complete; Differential Privacy has been applied; apportionment has occurred; and congressional districts have been drawn. Plaintiffs are no longer speculating about potential harms—they can point to documented evidence that Differential Privacy produced skewed results, created systematic bias against rural and minority populations, produced mathematically impossible negative values, and distorted population counts in ways that affected interstate apportionment and state legislative redistricting. SAC ¶¶ 54-84. The injury is not speculative or premature; it is concrete, completed, and documented. The ripeness doctrine that animated the *Alabama III* dismissal, therefore, does not constrain this case.

Here, by contrast, Plaintiffs include individual residents of Florida (the

presidents of the University of South Florida College Republicans and Pinellas County Young Republicans), and a Member of Congress (Byron L. Donalds)— all of whom fall squarely within Section 209(d)'s definition of "aggrieved persons." Individual residents are expressly identified in subsection (d)(1), and Congressmen are expressly identified in subsection (d)(2). Unlike the State of Alabama, which the *Alabama III* court found could not maintain a Section 209 action, these Plaintiffs are precisely the parties Congress intended to protect when it enacted Section 209's mandatory three-judge panel requirement. Moreover, unlike the individual plaintiffs in *Alabama III*, whose injuries were deemed premature and speculative, these Plaintiffs have suffered concrete, documented injury from the completed application of Differential Privacy and the Group Quarters Method. The *Alabama III* court's reasoning, therefore, supports, rather than undermines, both the justiciability of this case and the requirement for a three-judge panel to adjudicate it.

### C.    FAIR is distinguishable from the present case.

*Federation for American Immigration Reform, Inc. v. Klutznick* ("*FAIR*"), 486 F. Supp. 564 (D.D.C. 1980), is readily distinguishable and does not support denying a three-judge panel in this case. There are four reasons for this.

*First* and most fundamentally, *FAIR* involved plaintiffs seeking relief under general constitutional and statutory provisions, not under a statute that expressly mandates a three-judge court. The *FAIR* court analyzed whether the

13

case fell within the non-statutory criteria of 28 U.S.C. § 2284(a) as it existed at that time, concluding that "the issue is most likely one for a single district judge" because the challenge was "to census practices which will produce data on which the apportionment... will be based, not to any state action reapportioning congressional districts." *Id.* at 577. Here, by contrast, Plaintiffs invoke Section 209(e)(1), which provides that "[a]ny civil action brought under [Section 209] *shall* be heard and determined by a district court of three judges in accordance with section 2284 of title 28." Pub. L. 105-119, § 209(e)(1) (emphasis added). Because Congress already determined that challenges under Section 209 require a three-judge panel, this Court has no discretion to second-guess that statutory command based on policy considerations about whether such a panel is truly "necessary."

*Second*, the Supreme Court's decision in *Shapiro v. McManus*, which was decided 25 years after *FAIR*, fundamentally undermines the *FAIR* court's exercise of discretion in declining to convene a three-judge panel. In *Shapiro*, the Supreme Court unanimously rejected the notion that district courts possess discretion to dismiss apportionment challenges without convening three-judge panels based on the merits of the claims. The Court held that Section 2284(a)'s prescription "could not be clearer"—when "an action is filed challenging the constitutionality of the apportionment of congressional districts," a three-judge

court *must* be convened, for "§ 2284(a) admits of no exception, and the mandatory 'shall' normally creates an obligation impervious to judicial discretion." *Shapiro*, 577 U.S. at 43 (cleaned up). The Court further held that "all the district judge must determine is whether the request for three judges is made in a case covered by § 2284(a)—no more, no less." *Id.* at 44 (cleaned up). The *FAIR* court's discretionary analysis—weighing whether the nature of the challenge truly warranted three judges—is precisely the kind of merit-based gatekeeping that *Shapiro* forbids. Under *Shapiro's* clear command, once a case falls within Section 2284(a)'s coverage (as this case unquestionably does, as explained above), the three-judge requirement is mandatory and "impervious to judicial discretion."

*Third*, *FAIR* involved a pre-census challenge where apportionment had not yet been affected by the challenged practices. The *FAIR* plaintiffs sought to prevent the Census Bureau from including illegal aliens in the then-upcoming 1980 Census, arguing that such inclusion *would* affect future apportionment. 486 F. Supp. at 565–67. The court dismissed for lack of standing precisely because plaintiffs could only "speculate" about which states might gain or lose seats, concluding that "granting standing in this case would involve resting the requirement of injury in fact on speculation and conjecture" and not on "concrete harm." *Id.* at 570-71. Here, by stark contrast, the 2020 Census has been completed and the claimed harms are not speculative, as explained

above in Section II.B.3. The apportionment that resulted from these unlawful methodologies is a completed fact, not a speculative possibility. Plaintiffs challenge the constitutionality of that *completed* apportionment—precisely the type of challenge that Section 2284(a) requires be heard by a three-judge court.

*Fourth*, *FAIR* predated by seventeen years the adoption of § 209 as a vehicle for expedited review of challenges to statistical sampling methods. The current case is consequently distinguishable because a three-judge panel is "otherwise required by Act of Congress." 28 U.S.C. § 2284(a).

## III. Binding precedent and the Congressional mandate for expeditious resolution of this matter allow motions practice to continue during the pendency of this question.

Resolution of the question of whether this panel was properly constituted should not impede the resolution of Plaintiffs' claims. "The purpose of the three-judge scheme was in major part to expedite important litigation: it should not be interpreted in such a way that litigation, like the present one, is delayed while the proper composition of the tribunal is litigated." *Swift & Co. v. Wickham*, 382 U.S. 111 (1965).

Expeditious review by the Supreme Court was the intention of Congress when creating this cause of action. "[Section 209] assures there is a fair and impartial answer from the only body that can provide that, the Supreme Court." 143 CONG. REC. H7771, https://perma.cc/V74M-XF29 (daily ed. Sept. 24, 1997) (statement of Rep. Harold Rogers). For this reason, Congress directed

that: "It shall be the duty of a United States district court hearing an action brought under this section and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any such matter." Pub. L. No. 105-119, § 209(e)(2).

Consequently, courts regularly rule on the issue of three-judge panels while simultaneously ruling on other motions. *See, e.g., FAIR*, 486 F. Supp. at 578 (determination on three-judge panel simultaneous with ruling on summary judgment so that "in the event we are mistaken, an appeal can still be expeditiously taken in the appropriate forum."); *New York v. Trump*, 485 F. Supp. 3d 422, 481–82, 482 n. 21 (S.D.N.Y. 2020), vacated and remanded on other grounds, 592 U.S. 125 (2020) (granting summary judgment despite recognizing that necessity of a three-judge panel "is not clear-cut.").

Accordingly, if the Court still has doubts about the propriety of a three-judge panel, this case should expeditiously continue forward on the merits while it concurrently decides on the propriety of a three-judge panel here.

## VI.  Conclusion

The statutory mandate in Section 209, the constitutional challenge to apportionment under Section 2284(a), and controlling precedent all require that a three-judge panel hear this case. The panel was properly convened, and this court should proceed on the merits.

17

Dated: November 12, 2025                    Respectfully submitted,
*/s/ James Rogers*

James K. Rogers (AZ Bar No. 027287)*       R. Quincy Bird (FBN 105746)
Emily Percival (FBN 119313)                Timothy W. Weber (FBN 86789)
Ryan Giannetti (DC Bar No. 1613384)*       Jeremy D. Bailie (FBN 118558)
Crystal Clanton (AL Bar No. 1746D29O)*     **WEBER, CRABB & WEIN, P.A.**
Robert A. Crossin (IN Bar No. 39340-49)*   5453 Central Avenue
**AMERICA FIRST LEGAL FOUNDATION**         St. Petersburg, FL 33710
611 Pennsylvania Ave., SE #231             Telephone: (727) 828-9919
Washington, D.C. 20003                     Facsimile: (727) 828-9924
Phone: (202) 964-3721                      timothy.weber@webercrabb.com
james.rogers@aflegal.org                   jeremy.bailie@webercrabb.com
emily.percival@aflegal.org                 quincy.bird@webercrabb.com
ryan.giannetti@aflegal.org                 Secondary:
crystal.clanton@aflegal.org                lisa.willis@webercrabb.com
bobby.crossin@aflegal.org                  honey.rechtin@webercrabb.com
                                           natalie.deacon@webercrabb.com

                                           *Admitted *pro hac vice*

                                           *Counsel to Plaintiffs*