# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, et al.,

    Plaintiffs,

v.

HOWARD W. LUTNICK, in his official capacity as Secretary of Commerce, et al.,

    Defendants.

Case No. 8:25-cv-02486

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE FILED BY ALLIANCE FOR RETIRED AMERICANS, CAMERON DRIGGERS, AND MANUEL GUERRERO

Plaintiffs in this case, by and through the undersigned counsel, file this Response in Opposition to the Motion to Intervene (ECF No. 29). As detailed below in the memorandum of law, there is no need for intervention here, as Defendants adequately represent proposed intervenors' interests, and proposed intervenors lack standing. Therefore, Plaintiffs respectfully request that this Court DENY the Motion to Intervene as Defendants by Alliance for Retired Americans, et. al.

### BACKGROUND

Plaintiffs filed suit against the Secretary of Commerce and the Acting Director of the U.S. Census Bureau to remedy the unlawful use of statistical

practices when they conducted the 2020 decennial census. The Proposed Intervenors lack any stake in the litigation or evidence that their interests, if they had any, would not be adequately represented by Defendants. Their addition to this case is unnecessary and would serve only to complicate a straightforward matter of statutory interpretation, inviting undue cost and delay into a case in which prompt resolution is beneficial to all parties involved. Proposed intervenors are better suited to participate in this case, if at all, as *amici curiae*, not parties. The motion to intervene should be denied.

## STANDARD

"A party seeking to intervene as of right under Rule 24(a)(2) must show" four things. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). First, that "his application to intervene is timely;" second, that "he has an interest relating to the property or transaction which is the subject of the action;" third, that "he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest;" and fourth, that "his interest is represented inadequately by the existing parties to the suit." *Id*. The interest supporting intervention must be "a direct, substantial, legally protectible interest in the proceeding." *Id*. (cleaned up). "If a would-be intervenor fails to meet any one of these requirements then it cannot intervene as a matter of right." *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984) (per curiam).

Meanwhile, a party seeking permissive intervention "under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213. "The district court has the discretion to deny intervention even if both of those requirements are met, and its decision is reviewed for an abuse of discretion." *Id.*

## ARGUMENT

Because Proposed Intervenors have not asserted a legally protected interest, have not offered any cause to suspect that resolution of this matter without their involvement could impact their interests, and have not overcome the presumption of adequate representation, they cannot intervene as a matter of right. They should also be denied permissive intervention for the same reasons. They are unlikely to contribute anything to this case, save delay and confusion.

### I. Proposed Intervenors have no right to intervene because they have not asserted a legally protectable interest.

Proposed Intervenors apparently seek to protect the use of Group Quarters Imputation (the "Group Quarters Method" or "GQM") and "ensur[e] that they, their members, and their communities are accurately counted in the census, no matter where they might live." ECF No. 29 at 16 (hereinafter "Interv. Mot."). But they have no legal right to the former and have alleged no evidence of any threat to the latter.

3

Proposed Intervenors' effort to minimize the protectable interest element of the Rule 24(a) test is misguided. Although it is true "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24" in the 11th Circuit, *Chiles*, 865 F.2d at 1213, this is not because the standard has no teeth or is less than Article III requires. Rather, *Chiles* recognized that the Supreme Court "has never articulated the precise relationship between [the Rule 24] interest and the Article III standing requirements," and lower courts have "rendered anomalous decisions on this issue." *Id*. at 1212 (collecting cases from other circuits, including some holding that the Rule 24 interest must be greater than Article III, some that the standards are equal, and some that an intervenor need not possess standing). So this Circuit has compromised, concluding that "Intervention under Rule 24 presumes that there is a justiciable case into which an individual wants to intervene," and Rule 24 requires "a legally protectable interest in the litigation." *Id*. Thus, rather than require strict proof of Article III standing, the 11th Circuit relies on standing cases "to help define the type of interest that the intervenor must assert." *Id*. at 1212–13. The standard for intervention is not meaningfully less restrictive than standing; it is merely less well-defined by the case law.

That said, the standard is far from meaningless. "In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber Co., Inc. v. Fed. Election Comm'n*,

4

690 F.2d 1364, 1366 (11th Cir. 1982). A party seeking intervention as a matter of right cannot, for example, rely on a "purely economic" interest, *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311–12 (11th Cir. 2005), or generalized political interests, *Athens Lumber*, 690 F.2d at 1366. "It is in this context that the standing cases are relevant, for an intervenor's interest must be a particularized interest rather than a general grievance." *Chiles*, 865 F.2d at 1212; *see also*, *Howard v. McLucas*, 782 F.2d 956, 958 (11th Cir. 1986) (denying intervention where movants had "only a generalized grievance").

Thus, a would-be intervenor must assert a legally protectable interest, which is "one which the *substantive* law recognizes as belonging to or being owned by the applicant," *i.e.*, "an interest that derives from a legal right." *Mt. Hawley*, 425 F.3d at 1311. Proposed Intervenors have not done so.

Proposed Intervenors first claim an interest in the use of the GQM, but offer no legal reason why they should be entitled to the use of any particular statistical method by the Census Bureau. There is none. Public Law 105-119 § 209 offers a right of action to "[a]ny person aggrieved by the *use* of any statistical method in violation of the Constitution or any provision of law" (emphasis added), but does not confer any right of action for the *non-use* of a statistical method that violates the Constitution or other law. Nor, for that matter, would it provide a right of action to *force* the use of a lawful method, such as the sort of individualized imputation at issue in *Utah v. Evans*, 536 U.S. 452 (2002).

5

Proposed Intervenors repeatedly emphasize their concern about prohibiting the use of "*any* statistical methods" in preparing the Census Report. *See, e.g.*, Interv. Mot. at 8 (emphasis in original). But Plaintiffs have not demanded the Census Bureau abstain from using "statistical methods or methodologies of any kind." *Id.* at 10. Plaintiffs merely demand that the Census Bureau not use "statistical methods" as defined in—and prohibited by—Public Law 105-119 § 209. No one—Proposed Intervenors or otherwise—has a legal right to demand the use of such unlawful methods, regardless of Mr. Driggers or Mr. Guerrero's "concern" about the sweeping prohibition on statistical methods in U.S. law. Congress has prohibited the use of statistical methods, and policy concerns or grievances with such prohibition can only be addressed through the political process, not in court. *See* U.S. CONST. art. 1, § 2, cl. 3 (census to be conducted "in such Manner as [Congress] shall by Law direct").

Even if some right to force the Census Bureau to use certain methods existed, or if once a method had been used, a party could claim a right not to have its use later voided, Proposed Intervenors would still have no legally cognizable right here. The Alliance for Retired Americans ("the Alliance") touts its reach and influence, claiming "4.4 million retirees in all fifty states," Interv. Mot. at 3, but does not identify or even claim to represent a single member who would not have been counted in the 2020 census but for the GQM.

6

There is no suggestion in the Proposed Intervenor's Motion that any of their 4.4 million members were unable to be counted directly or reasonably believed they were, instead, counted via the GQM. The Alliance does not indicate any reason to believe that any of its members would not have been counted in 2020 or will not be counted in 2030 without the GQM. The Alliance merely alleges that the count for individuals with characteristics like its membership's might have been slightly lower (which is likely, as the GQM adds fictitious persons who do not exist). The Alliance's members do not have a right to be counted on behalf of unknown, unidentifiable others (who are likely fictitious).

Proposed Intervenors Driggers and Guerrero also make no such allegation. Indeed, their claims are even less relevant than the Alliance's, as neither of them would have been affected by the GQM in 2020, nor are they likely to be in 2030. Mr. Driggers only claims to have lived in on-campus housing starting in 2025, five years *after* the 2020 census. ECF No. 29-2 ¶ 4.

Mr. Driggers claims to currently live in group quarters as a student in the University of Central Florida's Master of Nonprofit Management program. ECF No. 29-2 ¶ 3. That is a 2-year program. *Nonprofit Management, MNM*, UNIV. OF C. FLA. (last visited Oct. 30, 2025) https://perma.cc/9C5K-6U8E. The odds of an adept and talented student like Mr. Driggers spending another five years in a two-year program (or of the University of Central Florida permitting him to do so) are, at best, remote. Therefore, he is unlikely to live in group

7

quarters in 2030. Mr. Driggers does not claim that he occupied group quarters for the 2020 census, nor that he will occupy group quarters for the 2030 census.

Similarly, Mr. Guerrero does not allege that he lived in group quarters before 2024, four years *after* the 2020 decennial census, or that he will live in group quarters during the 2030 decennial census. ECF No. 29-3 ¶ 4. To the contrary, he indicates that he is an undergraduate student in a standard four-year program and will have graduated and moved on by 2028, two years *before* the 2030 census. *Id.* ¶¶ 3-4. Mr. Guerrero does not claim that he occupied group quarters for the 2020 census, nor that he will occupy group quarters for the 2030 census.

In short, Mr. Driggers and Mr. Guerrero not only fail to allege a legally cognizable interest, they fail to allege that they are anything but complete strangers to the matters at issue in this case.

None of the Proposed Intervenors has shown anything resembling a legally cognizable interest in this case. The Rule 24(a) inquiry ought to end there, with Proposed Intervenors' Motion being denied.

## II. Proposed Intervenors have no right to intervene because they have not shown how any interest would be impeded or impaired by the resolution of this case.

As explained above, the Proposed Intervenors have no interest at stake, so none could be impeded. But even if there were some legally cognizable interest, Proposed Intervenors have not indicated how their interests could be

8

impeded by the resolution of this case without their participation.

Proposed Intervenors have not alleged, for example, that their members were undercounted in prior censuses that did not use the GQM to add fictitious residents to group quarters, nor that they would be undercounted if the use of the GQM in 2020 were remedied. As explained above, there is no allegation that any of the Proposed Intervenors' members were not counted by standard, reliable methods and would have been excluded without the use of the GQM.

More importantly, there is also no allegation to suggest that, absent the unique circumstances of the COVID-19 pandemic, the non-use of GQM would have impacted anyone. As Proposed Intervenors recognize, the COVID-19 pandemic was a unique circumstance that, according to them, "necessitat[ed] a new imputation strategy." Interv. Mot. at 6. Assuming Proposed Intervenors are correct about the utility of the GQM, and even if GQM were lawful, there is no reason to believe that it continues to be necessary (or even useful) *absent* the COVID-19 pandemic.

Under current circumstances, even if Proposed Intervenors had something at stake in this case, there is no reason to believe it would be affected by the resolution of Plaintiffs' claims. If Plaintiffs are successful and remedial actions are taken with respect to the 2020 census, and/or GQM methods are prohibited in the 2030 census, there is no reason to believe that any group quarters will be undercounted, any members of the Alliance will be missed by the

Census Bureau, or that Messrs. Driggers and Guerrero will not be represented, along with their peers, in the final census report.

Because Proposed Intervenors cannot show that their interests will be impeded by the resolution of their case, they have no right to intervene.

### III. Proposed Intervenors have no right to intervene because they have not overcome the presumption of adequate representation.

Even if Proposed Intervenors had some cognizable interest at stake and it was actually threatened in this case, they have no right to participate because their interests are already adequately represented by the United States.

Rule 24(a) is unambiguous that a proposed intervenor cannot intervene by right to protect its interests if "existing parties adequately represent that interest." Proposed Intervenors here have offered no evidence to indicate that they are not already adequately represented, nor can they.

It is not enough to merely assert that a party is inadequately represented. A proposed intervenor "must overcome a presumption—that it is adequately represented—that arises when applicants for intervention seek to achieve the same objectives as an existing party in the case." *United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002).

Even if Proposed Intervenors could carry their burden of rebutting the presumption of adequate representation, "the court returns to the general rule that adequate representation exists 'if no collusion is shown between the

representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervener, and if the representative does not fail in fulfillment of his duty.'" *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999).

Despite the relatively light burden of this presumption, Proposed Intervenors offer no substantive reason to suspect their interests are not adequately protected. They struggle to differentiate between Defendants' interest in defending the validity of the 2020 Census Report and their own interest in Congressional apportionment. But apportionment stems directly (and mathematically) from the Census Report, so defense of one *is* defense of the other. There is, in truth, no distinction.

Proposed Intervenors point to *Georgia v. U.S. Army Corps of Engin's*, 302 F.3d 1242 (11th Cir. 2002), but they quote Georgia's failed argument to make their point. *See* 302 F.3d at 1259 (rejecting the characterization that "in this proceeding [Georgia and proposed intervenors] positions are identical: they both believe that Georgia's water supply request should be denied"). Indeed, the conflicts among the parties and proposed interveners were far more complex than the Proposed Intervenors let on, and in many ways, all were directly at odds with one another. Georgia argued that the proposed intervenors, Southeastern Federal Power Customers, Inc. ("SeFPC") and the State of Florida, were adequately represented by the existing defendants, the Army Corps

11

of Engineers. *Id*. at 1259. But SeFPC had argued for some time that "the Corps has been illegally diverting water at Lake Lanier for the allegedly unauthorized use of water supply since 1986," and Florida argued the entire proceeding was a usurpation of authority "in violation of the [Apalachicola-Chattahoochee-Flint Compact ("ACF Compact")]." *Id*. at 1248 & 1259.

Thus, what Proposed Intervenors here characterize as the Corps merely seeking to "protect its decision making process," was a direct challenge to Florida's and SeFPC's claimed rights. Interv. Mot. at 20. To defend its decision-making, the Corps necessarily had to defend its right to engage in such decision-making, and the scope of that right was challenged by both Florida and SeFPC. Florida's protectable property interest in water flowing to its state, and the ACF Compact that governed that interest, would necessarily have been curtailed if the Corps won its arguments relating to the scope of its authority over the disputed waterways. SeFPC's property interest in Lake Lanier waters would similarly have been curtailed if the Corps won.

Here, Proposed Intervenors allege no such adversity of purpose. Proposed Intervenors do not challenge the Census Bureau's authority to conduct the census, as the proposed intervenors in *Georgia* challenged the Corps of Engineers' authority to allocate water rights in Lake Lanier. Nor do they challenge how the Census Bureau conducted the 2020 census, nor any other aspect of the Bureau's authority, methodology, 2020 Census Report, or the allocation

12

of representation resulting therefrom. Proposed Intervenors have failed to point to any daylight between themselves and the existing Defendants.

Contrary to Proposed Intervenors' arguments, this case bears a striking similarity to *Texas v. United States Department of Homeland Security*, No. 6:24-cv-00306, 2024 WL 4039580 (E.D. Tex. Sept. 3, 2024) *aff'd* No. 24-40571, 2024 WL 4404421 (5th Cir. Oct. 4, 2024). There, Texas challenged an immigration policy promulgated by the administration. The movants, like the Proposed Intervenors in this case, argued that their much more personal interest meant the government could not adequately represent them. But the court, despite "appreciate[ing] that movants have a deeply personal interest in the rule's implementation," as compared to the government's relatively mundane interest in protecting its own decision-making, does not suffice to show "any adversity of interest, collusion, or nonfeasance." *Id.* at *4; *see also Hopwood v. Texas*, 21 F.3d 603, 607–08 (5th Cir. 1994) (denying intervention to movant beneficiaries of a government program, despite their personal interest in the matter and the likelihood that they would "have ready access to more evidence than the State," because they could simply provide that evidence to the State and had not shown that the State would not defend its program or "that they have a separate defense" not available to or asserted by the State).

The same applies here. Proposed Intervenors have not offered a single defense of the 2020 Census's methodology that the Bureau itself could not offer,

13

nor any interest at odds with what the Defendants will likely assert. Any assertion that Defendants will not vigorously defend their conduct is premature and purely speculative. The *Texas* court noted that all the cases cited in support of intervention "turned on a demonstrated variation between a position taken by the government in the case and the interests of the movants." *Texas*, 2024 WL 4039580 at *3. But, as in *Texas*, Proposed Intervenors cannot identify any such variation here. They are adequately represented.

Proposed Intervenors rely on a handful of out-of-circuit cases to argue in general terms that government representation may not be adequate, but they forget that courts closer to home presume the very opposite. The Eleventh Circuit has explained: "When, as here, that existing party is a government entity, '[w]e presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation.'" *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (quoting *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2025)) (unpublished and nonprecedential, cited only for persuasive value). "The presumption of regularity supports the official acts of public officers and, in the absence of *clear evidence to the contrary*, courts presume that they have properly discharged their official duties." *United States v. Dixon*, 672 F. Supp. 503, 504 (M.D. Ala. 1987) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1 (1926)) (emphasis added by the *Dixon* Court). The presumption is

14

accorded varying strength in varying contexts, but, whatever strength it is accorded here, Proposed Intervenors have offered *no evidence whatsoever* to overcome it (nor could they, as Defendants have yet to file anything).

Further, the out-of-circuit precedent cited by Proposed Intervenors does not counter this point. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011), involved an intervenor attempting to defend a rule that the government agency had initially adopted only because it was compelled to do so "by the prior district decision, which the Forest Service is also seeking to overturn." In other words, the actual position of the party *in active litigation* was directly opposed to the movant. *Id*. Similarly, in *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973, proposed intervenors pointed to "a companion case" where "the agency chose not to appeal an adverse ruling" related directly to the case's subject matter. No such conflict exists here; Proposed Intervenors did not force the Census Bureau to adopt GQM through litigation, nor has the Census Bureau failed to defend its methods or the 2020 Census Report as a whole in any companion case.

Proposed Intervenors rely heavily on *Judicial Watch, Inc. v. Illinois State Board of Elections*, No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024), but their reliance is misplaced. To be sure, the *Judicial Watch* court acknowledged that a government defendant and a proposed intervenor could be at odds, but the case's outcome was not based on mere speculation. In fact,

15

the intervenors pointed to a recent settlement by a similar government defendant on the *exact* issue at hand (voter roll maintenance and removal of ineligible voters). *Id*. at *5. There was also potential for compromise, although any settlement was likely to impair the interests of intervenors—arguably, it was unavoidable—meaning that there would inevitably be conflict between the movants and defendants unless the latter adopted an absolutist, no-compromise, no-settlement stance. *Id*.

Here, no such circumstances exist. The Census Bureau has not previously agreed to a settlement that would nullify its own recent statistical methods. Nor is there a possibility for a compromise that the Census Bureau might find acceptable, but Proposed Intervenors would not, unless the Census Bureau completely reverses its position and concedes to this litigation (an outcome Plaintiffs would welcome, but believe is unlikely and, at best, purely speculative). Either the statistical methods are legally valid or they are not; the GQM cannot be "sort of" legal, nor is there any rational scenario where the 2020 Census Report is rewritten so that the Census Bureau only uses illegal statistical methodology to a small degree.

Rather, this case better resembles one that *Judicial Watch* itself repeatedly cited: *Bost v. Illinois State Board of Elections*, 75 F.4th 682 (7th Cir. 2023). There, although movants pointed to several ways in which their interests diverged from the government party, they did not identify any way in which such

16

divergent interests actually created a conflict between movants and the existing, adequate party. If pointing out different interests was sufficient, "then the default rule would simply be that intervention as of right is automatic." *Id.* at 690. Obviously, this is not the case, so the Court emphasized that "[w]ithout any showing of conflict—potential or otherwise—[the movant] has failed to carry its burden and is not entitled to intervention as of right." *Id.*

Here, Proposed Intervenors cannot show any conflict between themselves and the Defendants. They point to a tweet by the President, absent an Executive Order, proposed rulemaking, or other formal policy action of any kind, and another by the Governor of Florida, who is not a federal official and has no involvement in, or responsibility for, the conduct of the census in any way. Proposed Intervenors also cite a news article about personnel changes at the Census Bureau, without explaining how they are relevant (the article cited makes no connection between the dismissed personnel and the Group Quarters Count Imputation Team; neither does it show that any of these personnel voiced support for the GQM or Differential Privacy). How the cited personnel actions relate to this matter remains a mystery, and, absent any form of government action or indication as to how the Defendants propose to litigate this case, there is no conflict between the Defendants and the Proposed Intervenors that could overcome the presumption of adequate representation.

17

Proposed Intervenors are ineligible to intervene as of right under Rule 24(a).

### IV. Proposed Intervenors should also be denied permissive intervention.

Courts routinely deny permissive intervention to parties ineligible for intervention of right, and this Court should refuse Proposed Intervenors the opportunity to waste party and judicial resources and delay resolution of this case.

As explained above, Proposed Intervenors lack any protectable interest in this case. They do not claim that they or their members were affected by the disputed statistical methods, nor that such an effect would give them a valid interest in forcing the Census Bureau to use unlawful methods for a future census. In fact, Driggers and Guerreros are complete strangers to this litigation, having neither lived in group quarters during the 2020 census nor expressed any intention to do so during the 2030 census. Of the two challenged statistical methods, none of the Proposed Intervenors has shown *any* interest in Differential Privacy—they say nothing about it. There is simply no reason to allow these movants, who only seek to sustain an unlawful distortion of the Census, to join this case.

Where, as here, there is no reason to believe that party status, as opposed to participation as amici, will allow Proposed Intervenors to resolve any issue in this case, it is appropriate to deny permissive intervention. *See, e.g., Mt.*

18

*Hawley*, 425 F.3d at 1312 (denying intervention where the court did "not see how [movant's] intervention will help resolve the issue[s]" relevant to that case).

Even where a movant has alleged some remote interest in the matter, which Proposed Intervenors here have failed to do, the court need not entertain their participation as a party. "Because the introduction of additional parties inevitably delays proceedings," even a party with a greater interest than Proposed Movants (albeit one described as remote and general) may be properly excluded. *Athens Lumber*, 690 F.2d at 1367; *see also Chiles*, 865 F.2d at 1215 ("The duplicative nature of the claims and interests [movants] asserted threatens to unduly delay the adjudication of the rights of the parties in the lawsuit and makes it unlikely that any new light will be shed on the issues to be adjudicated."); *Hopwood*, 21 F.3d at 606 (affirming denial of permissive intervention where district court "held that the proposed intervenors' interests were adequately being represented by the defendants in the case and that adding them to the lawsuit would needlessly increase costs and delay disposition of the litigation").

## CONCLUSION

Because Proposed Intervenors have no cognizable interest in this case, will not be prejudiced by its resolution, and are adequately represented by existing parties, they are not entitled to intervention as of right under Rule 24(a).

19

Because they have offered no unique arguments or reasons to believe that their participation would serve any purpose other than to cause undue delay and expense, they should be denied permissive intervention under Rule 24(b).

DATED: November 12, 2025            Respectfully submitted,


<u>/s/ Ryan Giannetti</u>
| | |
|---|---|
| James K. Rogers (AZ Bar No. 027287)* | R. Quincy Bird (FBN 105746) |
| Emily Percival (FBN 119313) | Timothy W. Weber (FBN 86789) |
| Ryan Giannetti (DC Bar No. 1613384)* | Jeremy D. Bailie (FBN 118558) |
| Crystal Clanton (AL Bar No. 1746D29O)* | **WEBER, CRABB & WEIN, P.A.** |
| Robert A. Crossin (IN Bar No. 39340-49)* | 5453 Central Avenue |
| **AMERICA FIRST LEGAL FOUNDATION** | St. Petersburg, FL 33710 |
| 611 Pennsylvania Ave., SE #231 | Telephone: (727) 828-9919 |
| Washington, D.C. 20003 | Facsimile: (727) 828-9924 |
| Phone: (202) 964-3721 | timothy.weber@webercrabb.com |
| james.rogers@aflegal.org | jeremy.bailie@webercrabb.com |
| emily.percival@aflegal.org | quincy.bird@webercrabb.com |
| ryan.giannetti@aflegal.org | Secondary: |
| crystal.clanton@aflegal.org | lisa.willis@webercrabb.com |
| bobby.crossin@aflegal.org | honey.rechtin@webercrabb.com |
| | natalie.deacon@webercrabb.com |

*Admitted *pro hac vice*

*Counsel to Plaintiffs*

20