IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> HOWARD W. LUTNICK, Secretary of Commerce, *in his official capacity*, *et al.*, <br><br> *Defendants*. | Case No. 8:25-cv-02486-WFJ-SDM-RSR |

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE AS DEFENDANTS BY
ALLIANCE FOR RETIRED AMERICANS,
CAMERON DRIGGERS, AND MANUEL GUERRERO**

This suit involves a challenge to certain aspects of the 2020 Census conducted by the U.S. Census Bureau. *See* Second Amended Complaint ("Compl."). Plaintiffs here are the University of South Florida chapter of College Republicans ("USF Republicans"), the President of USF Republicans, the Pinellas County chapter of Young Republicans ("Young Republicans"), the President of Young Republicans, and Congressman Byron Lowell Donalds. Plaintiffs sued Defendants, Secretary of Commerce Howard Lutnick and Acting Director of the Census Bureau George Cook in their official capacities, claiming that the Census Bureau violated Article I, Section 2 of the U.S. Constitution, Section 2 of the Fourteenth Amendment, along with various statutory provisions in the conduct of the 2020 Census by using certain methods for calculating the number of people residing in group housing and by injecting certain noise into the data to protect respondents' confidentiality.

The Alliance for Retired Americans ("ARA"), and two students at the University of Central Florida (together, "Proposed Intervenors") seek to intervene to defend against Plaintiffs' claims

alongside Defendants under Federal Rule of Civil Procedure 24. *See* Mot. to Intervene, ECF No. 29. While Defendants would not oppose Proposed Intervenors' participation as amici curiae, the Court should deny Proposed Intervenors' request to intervene as outright defendants. Proposed Intervenors are unconnected to the congressional districts that form the basis of jurisdiction in this case, and they lack the required interest to intervene as of right. *See* Compl. ¶ 18. Moreover, Defendants more than adequately represent Proposed Intervenors' interests. Indeed, Defendants have an interest in protecting the Census Bureau's discretion to use appropriate methods for enumerating residents of group housing and for ensuring compliance with the confidentiality and privacy provisions of Title 13. In addition, intervention by three additional parties could have adverse effects on this litigation while producing no benefits beyond what could be gained by permitting Proposed Intervenors to participate as amici. The Court should deny Proposed Intervenors' Motion.[1]

**I.   Proposed Intervenors do not have a right to intervene under Rule 24(a)(2) because they lack the requisite interest, do not show that this litigation will impede that interest, and have not demonstrated that Defendants will not adequately represent them.**

To intervene as of right under Rule 24(a)(2), a party must show that "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing

---

[1] Proposed Intervenors also note in their brief addressing the necessity of a three-judge panel that Plaintiffs lack Article III standing. *See* Proposed Intervenors' Brief Regarding the Need for a Three-Judge Panel, ECF No. 47 at 2–3. If true, then Potential Intervenors' Motion should be denied because there is no justiciable case into which Potential Intervenors can intervene. *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989) ("Intervention under Rule 24 presumes that there is a justiciable case into which an individual wants to intervene.").

2

*Athens Lumber Co., Inc. v. Federal Election Commission*, 690 F.2d 1364, 1366 (11th Cir.1982) (citing standing cases to determine that intervenor's claimed interest in federal elections was too generalized to support intervention of right)). To be clear, Proposed Intervenors bear this burden of proof under Rule 24(a)(2). *See Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004). But for purposes of this Motion, Defendants will assume that Proposed Intervenors have satisfied the first requirement. It is clear, however, that Proposed Intervenors have failed to establish the remaining three requirements of Rule 24(a)(2).

A putative intervenor satisfies the second requirement of Rule 24(a)(2) if his "interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Engrs.*, 302 F.3d 1242, 1249 (11th Cir. 2002). Such an interest could take many forms and "need not . . . be of a legal nature identical to that of the claims asserted in the main action," *id.* at 1251 (citing *Chiles*, 865 F.2d at 1214), but the interests asserted by Potential Intervenors here are divorced from the particulars of this case and fall short.

In contrast, in *Georgia* the State of Florida satisfied the second requirement of Rule 24(a)(2) by asserting an interest in the downstream effects of a dispute between the State of Georgia and the Army Corps of Engineers over whether to increase the flow of water to Atlanta from a Corps-controlled reservoir. *Id.* at 1251–52. Diverting additional water to Atlanta, Florida argued, would consume water that would otherwise flow downstream and would increase wastewater discharges to Florida via the Chattahoochee River, which becomes the Apalachicola River at the Florida border. *Id.* Florida's claimed interest in the quantity and quality of water flowing into its borders from the Chattahoochee was legally protectable and also directly and substantially related to Georgia's dispute with the Corps over Atlanta's use of water on the same

river. *Id.* at 1252. Here, however, there is no such direct and substantial relationship between the interests asserted by Potential Intervenors and the subject of this litigation.

Recall that "this Court has jurisdiction" over this matter based on Plaintiffs' allegations concerning Defendants' actions in the 2020 Census and how they "affected Florida and the representative composition of the 14th and 15th congressional districts, as well as state legislative districts covering the same locales, where USF Republicans and Young Republicans' members reside." *See* Compl. ¶ 18. Here, Potential Intervenors Mr. Driggers and Mr. Guerrero assert an interest in avoiding "dilution of their votes and diminishment of their representation due to the undercounting of the population of their communities." Mot. at 14–15. But Mr. Driggers' and Mr. Guerrero's vote dilution interest is confined to the 10th Congressional District of Florida, where they both reside. *See id.* at 10. Any potential vote dilution that may result from this litigation is highly speculative, and depends upon a series of contingent events, such as whether changing the group quarters methodology changes the overall population of the state, and then, whether the Census would count the state population first, and subsequently break it down by Congressional District in a zero sum process. And even if, as Proposed Intervenors speculate, this litigation results in vote dilution through these uncertain processes, this hypothetical dilution would first be as to voters in the 14th or 15th Congressional District(s) that form the basis of jurisdiction in this matter. Modifying the composition of those districts by removing certain persons counted in group quarters, as Proposed Intervenors fear, would require people to be added from elsewhere in Florida. This could potentially have the effect of *concentrating* Mr. Driggers and Mr. Guerrero's votes in the 10th Congressional District rather than diluting them, *see id.* at 14–15, which is a far cry from Florida's claim that it could receive less and dirtier water downriver from Georgia's dispute with the Army Corps of Engineers. *See Georgia*, 302 F.3d at 1252.

4

Alliance for Retired Americans similarly fails to connect their general concerns over vote dilution to the 14th and 15th Congressional Districts of Florida. *See* Mot. at 9. These generalized concerns are shared by voters everywhere in Florida, and thus "will not support a claim for intervention of right." *See Athens Lumber*, 690 F.2d at 1366. Such interests in the matter before the Court are not "direct, substantial, and legally protectable," and are not protected under Rule 24(a)(2). *See Georgia*, 302 F.3d at 1249.

"The nature of the [putative intervenor's] interest and the effect that the disposition of the lawsuit will have on their ability to protect that interest are closely related issues. 'The second cannot be answered without reference to the first.'" *Chiles*, 865 F.2d at 1214. Here, the highly speculative and contingent connection between the outcome of this suit and Potential Intervenors' interests in avoiding vote dilution elsewhere in Florida are insufficient to meet the third requirement under Rule 24(a)(2). *Cf. id.* (reversing and remanding to allow detainees to intervene as of right in litigation involving the site of their detention because, inter alia, the potential stare decisis effect of the litigation on their interest in the "the very property and very transaction that is the subject of the main action" met the third requirement of Rule 24(a)(2)).

Finally, while the showing required under the inadequate representation prong of Rule 24(a)(2) is "minimal," *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972), the burden of this showing is upon Proposed Intervenors. And they fail to meet it. Proposed Intervenors suggest that the required showing for inadequacy of representation is even lower because "the party on which the proposed intervenor must rely to represent its interests is the government." Mot. at 18. But Proposed Intervenors' non-precedential, out-of-circuit citations do not bear the weight they seek to place on them. *See id.* (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (listing cases in which government interests did not align with

those of putative intervenors, such as when the government would be "shirking its duty" to advance putative intervenor's narrower interest) *abrogation on other grounds recognized by Institutional Shareholder Services, Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025); *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998) (presumption that a government entity's representation is adequate can be overcome when a putative intervenor has a "more parochial view")). In fact, in some cases courts require "a much stronger showing of inadequacy" "where the party whose representation is said to be inadequate is a governmental agency," *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994), *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Commission*, No. 1-15-CV-134 RP, 2015 WL 11613286, at *4 (W.D. Tex. Dec. 22, 2015), or even invoke a presumption that a "government entity charged by law with representing a national policy is presumed adequate for the task." *Kleissler*, 157 F.3d at 972.

Here, Defendants are charged with implementing a decennial census, *see* 13 U.S.C. § 141(a), that meets the constitutional requirement for an "actual enumeration," U.S. Const. art. I, § 2, cl. 3, and statutory requirements for confidentiality, *see* 13 U.S.C. § 9. Because of the nature of the Census, the broad public interests that Defendants represent necessarily include an interest in ensuring the accuracy of the Census in the 10th Congressional District, as well as the rest of Florida. *See United States v. City of Miami*, 278 F.3d 1174, 1179 (11th Cir. 2002) ("Because the objectives the [putative intervenor] seeks to achieve in this case are goals shared by the United States, the [putative intervenor]'s members are adequately represented."). To meet their burden of showing inadequacy, Proposed Intervenors speculate that Defendants could potentially enter into a settlement agreement with Plaintiffs based on the specter of alleged political machinations. Mot. at 21–22. But the Court need not credit these bald assertions and should find that Proposed

Intervenors have failed to show that Defendants do not adequately represent their vote dilution interests.

## II. The Court should exercise its discretion to deny permissive intervention under Rule 24(b)(1)(B).

Permissive intervention under Rule 24(b)(1)(B) "is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Georgia*, 302 F.3d at 1250. Even when the requirements of Rule 24(b)(1)(B) are met, permissive intervention "lies within the discretion of the district court." *Athens Lumber*, 690 F.2d at 1367. "When exercising its discretion to allow permissive intervention, a district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene]." *Doe v. Norweigan Cruise Lines*, Case No. 23-cv-24236-BLOOM/Torres, 2024 WL 3887428, at *1 (S.D. Fla. Aug. 21, 2024) (quotations removed).

For purposes of this Motion only, Defendants assume that the requirements for permissive intervention are met. Even so, the Court should exercise its discretion to deny Potential Intervenors' request for permissive intervention, including because Proposed Intervenors' assert general interests that are not directly and substantially tied to this litigation, and fail to show that Defendants' representation of those interests is inadequate. *See, e.g.*, *Brackeen v. Zinke*, Civ. A. No. 4:17-cv-00868-O, 2018 WL 10561984, at *5 (N.D. Tex. June 1, 2018) (denying permissive intervention, in part, because the putative intervenor had not demonstrated inadequate representation). As noted above, Proposed Intervenors have failed to show the required interest nor that Defendants will not adequately represent that interest, and their addition as parties to this case will produce few, if any, benefits.

On the other hand, intervention by Proposed Intervenors could have adverse effects. These include an increase in the number of summary judgment motions and the breadth of issues presented therein. As an alternative to intervention, the Court may consider, and Defendants would not oppose, Proposed Intervenors' participation as amici curiae. That approach would give them a voice in the litigation without the additional burdens on the Court and Parties that attend full intervention.

* * *

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion to Intervene, ECF No. 29. Defendants have no objection to Proposed Intervenors participating in this case as amici curiae.

Dated: November 12, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Branch Director

/s/ *Kevin K. Bell*
KEVIN K. BELL
(GA Bar No. 967210)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-8613
E-mail: Kevin.K.Bell@usdoj.gov
*Lead Counsel for Defendants*