UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD W. LUTNICK, et al., <br><br> Defendants. | No. 8:25-cv-02486-WFJ-SDM-RSR |

## **REPLY IN SUPPORT OF MOTION TO INTERVENE**

Proposed Intervenors are entitled to intervene here because they and their members have a legally protected interest in preserving their undiluted votes, which requires preserving the Census Bureau's authority to use the statistical methodologies that Plaintiffs challenge. They are not strangers to this case—they are, or represent, exactly the communities most threatened by Plaintiffs' claims. Defendants do not adequately represent the interests of those communities; instead, they deny those interests even exist.

**I.      Proposed Intervenors have a legally protected interest.**

Proposed Intervenors have a legally protected interest in preserving the accuracy of the 2020 census's count of the communities in which they live—which include substantial group quarters—and thereby in preserving their

1

undiluted voting power. As the Supreme Court has explained, the Census Bureau "uses imputation only as a last resort—after other methods have failed," when its only other option would be "to disregard the information it has, using a figure of zero" for a housing unit that it believes is populated. *Utah v. Evans*, 536 U.S. 452, 478 (2002). Proposed Intervenors are directly implicated by that choice: Cameron Driggers and Manuel Guerrero live on or near the UCF campus, where several dorms are alleged to have been affected by Group Quarters Imputation ("GQI") in Exhibit A to Plaintiffs' Second Amended Complaint. Doc. 43-1 at 2. Mr. Guerrero lived in one of those dorms from 2024–2025. Ex. A ¶ 2. And the Alliance for Retired Americans has hundreds of thousands of members in the seven states in which Plaintiffs now say the challenged methods produced overcounts. Ex. B ¶ 3.[1]

Plaintiffs' argument that Proposed Intervenors lack a cause of action to force the use of any particular statistical method misses the point for two reasons. Doc. 45 at 5. First, "[a]s the Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or

---

[1] It makes no difference whether Proposed Intervenors or their members were *themselves* counted five years ago using GQI, Doc. 45 at 6—what matters is the alleged effect on the populations of their communities, which is what determines representation today. *Cf.* Doc. 43 ¶ 17 (alleging only that Plaintiffs' votes were "diluted," and not that they specifically were counted or not using the challenged methods). Nor does it matter whether GQI would have been needed absent the COVID-19 epidemic, Doc. 45 at 9, because Plaintiffs seek a revision to the 2020 census report that was taken during that pandemic, and that continues to determine apportionment today, Doc. 43 at 28.

'permission to sue.'" *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003); *see also GPI AL-N, Inc. v. Nissan N. Am., Inc.*, No. 17-cv-0511, 2018 WL 4323923, at *3 n.3 (S.D. Ala. Sept. 10, 2018) ("[T]he law does not require an intervenor as of right to have a direct legal claim or to be the subject of a direct legal claim." (collecting cases)). Second, and regardless, Proposed Intervenors seek to intervene as *defendants*, not plaintiffs—and defendants never need an affirmative cause of action. *See* Fed. R. Civ. P. 8(b).

Rather, what matters is whether Proposed Intervenors' interests "could be affected" by the "practical effect" of the relief sought. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1251–52 (11th Cir. 2002). In *Georgia*, for example, SeFPC had a "legally protectable interest in the production of hydropower" at a facility from which it purchased hydropower, even though it had "no statutory entitlement to a specific amount of power." *Id.* at 1257–58. Proposed Intervenors' right to their undiluted voting power is unquestionably "one which the *substantive* law recognizes as belonging to or being owned by" Proposed Intervenors. *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (per curiam); *see Reynolds v. Sims*, 377 U.S. 533, 566 (1964).[2]

---

[2] Despite Plaintiffs' protestations, Doc. 45 at 4–5, Eleventh Circuit precedent is clear that "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 n.4 (11th Cir. 1996) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)). But even if standing were required, Proposed Intervenors have it—the threatened dilution of their and

3

Defendants' argument that Proposed Intervenors lack an interest because Mr. Driggers and Mr. Guerrero do not live in FL-14 or FL-15 is even further off the mark. Doc. 49 at 4–5. The Second Amended Complaint is not limited to FL-14 and FL-15. It now includes Congressman Donalds, who represents FL-19. Doc. 43 ¶ 12. Further, the examples the Second Amended Complaint cites of allegedly affected group quarters are *all* in the University of Central Florida, where Mr. Driggers and Mr. Guerrero live, and they include the specific dormitory where Mr. Guerrero once resided. Doc. 43 ¶ 52; Doc. 43-1 at 2; Ex. A ¶ 2–3. Plaintiffs' summary judgment motion goes even further, arguing that the challenged practices "*infected the entire structure of representative government within the state,*" Doc. 50 at 23 (emphasis added).

## II. Defendants do not adequately represent Proposed Intervenors.

Defendants do not adequately represent Proposed Intervenors' interests, because they have at most an abstract interest in this case, and may or may not strongly defend it, whereas Proposed Intervenors' rights are directly threatened. "Where the absentee's interest is similar to, but not identical with, that of one of the parties, that normally is not enough to trigger a presumption of adequate representation." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (citation modified). A "presumption like that holds no

---

their members' votes via an alleged changed to apportionment is a recognized form of Article III injury. *See Baker v. Carr*, 369 U.S. 186, 207–08 (1962).

purchase" where the proposed intervenor and the existing defendant "may be expected to vindicate different points of view." *Id.*[3]

To start, Plaintiffs assume a lack of "collusion" between the existing parties that is far from clear. Doc. 45 at 10–11. The motion to intervene identified substantial reasons to think that Defendants may agree with Plaintiffs' claims, Doc. 29 at 21–22, and subsequent events in this case have only reinforced those concerns. For example, Defendants' opposition acknowledges Proposed Intervenors' argument that Plaintiffs' lack Article III standing *but nowhere suggests that Defendants will make it*; instead, Defendants seem to say the Court *has* jurisdiction. Doc. 49 at 2 n.1, 4. Defendants decry Proposed Intervenors' "bald assertions" that they may settle this case, but they notably do not say that they in fact intend to defend it. *Id.* at 6–7. Defendants emphasize an interest in "ensuring the accuracy of the Census" but pointedly do not say whether they believe defending this case serves that interest. *Id.* at 6. And Plaintiffs' actions—forgoing any discovery,

---

[3] Plaintiffs cite an unpublished, nonprecedential order for the proposition that the Eleventh Circuit applies a presumption of adequacy whenever the government is a defendant. *See* Doc. 45 at 14 (citing *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (per curiam)). But in published decisions, the Eleventh Circuit has repeatedly granted intervention to parties on the same side as the government, without applying any such presumption. *E.g.*, *Georgia*, 302 F.3d at 1259; *see also Greene v. Raffensperger*, No. 22-cv-1294-AT, 2022 WL 1045967, at *3 (N.D. Ga. Apr. 7, 2022) (noting a lack of "cases in this Circuit applying a similar heightened standard to motions to intervene. And, more importantly . . . under binding case law in *this* Circuit, the burden to show inadequacy of representation is minimal" (internal quotation marks omitted)).

5

Doc. 53 at 4, and filing an immediate summary judgment motion supported in critical respects only by an unsworn email newsletter from a former Trump Administration official, Doc. 50-9—are not those of litigants who seem to expect a vigorous defense.

Regardless—and even if Defendants ultimately do defend the challenged practices—Proposed Intervenors' interests are not identical and adequate representation is not presumed merely because two parties seek the same litigation outcome. As Plaintiffs acknowledge, Doc. 45 at 11, the Eleventh Circuit in *Georgia* rejected the argument that interests are identical merely because parties seek the same litigation outcome. 302 F.3d at 1259. And in *Chiles v. Thornburgh*, the Eleventh Circuit allowed detainees to intervene because, though they sought the same outcome as one of the existing parties—Dade County—they had different reasons for doing so. 865 F.2d 1197, 1214 (11th Cir. 1989).

Proposed Intervenors have an interest in ensuring that they and their members are appropriately counted, and that their votes are not diluted by an artificial undercount. Defendants represent only "broad public interests." Doc. 49 at 6. This "difference in interests is sufficient to overcome the weak presumption of adequate representation." *Stone v. First Union Corp.*, 371 F.3d 1305, 1312 (11th Cir. 2004); *see also Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999) ("This intent to represent everyone in itself indicates that

the commissioners represent interests adverse to the proposed interveners; after all, both the plaintiffs and the proposed defendant-interveners are Putnam County citizens."). And Defendants' insistence that Proposed Intervenors have no interest in this case, Doc. 49 at 4–5, belies any intent to represent that interest. *E.g.*, *Kane County v. United States*, 928 F.3d 877, 895 (10th Cir. 2019) ("[T]he United States opposes SUWA's intervention motion—further indicating that it may not adequately represent SUWA's interests here."); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citing opposition to motion to intervene as evidence of inadequate representation); *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) ("The Secretary's silence on any intent to defend the [proposed intervenors'] special interests is deafening.").

### III.  Alternatively, the Court should grant permissive intervention.

The Court should at a minimum grant permissive intervention. Neither side denies that the requirements for permissive intervention are met. Doc. 49 at 7; Doc. 45 at 18–19. And contrary to the parties' arguments, Doc. 49 at 8; Doc. 45 at 18–19, *amicus* status is not an adequate substitute because it will not allow Proposed Intervenors to defend this case if Defendants decline to do so, nor to fully assert legal arguments—including Plaintiffs' lack of standing—that Defendants may not choose to assert. *See Wyatt ex rel. Rawlins v. Hanan*, 868 F. Supp. 1356, 1358–59 (M.D. Ala. 1994).

Intervention will be helpful to the Court and serve the interests of justice by ensuring true adversity where it might otherwise be, or at least appear to be, lacking. It will ensure that this important case is decided based on a complete airing of the relevant factual and legal issues by the individuals most affected, and not based on a one-sided presentation. And intervention will not cause any delay—Proposed Intervenors have already shown that they are ready and able to litigate this case in accordance with all applicable deadlines. "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors . . . ." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the Court should grant intervention as of right or permissive intervention.

Dated: November 19, 2025

Respectfully submitted,

*/s/ David R. Fox*
David R. Fox*
Richard A. Medina*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C.
Telephone: (202) 968-4490
dfox@elias.law
rmedina@elias.law
*Special appearance

*Counsel for Proposed Intervenors*

*/s/Frederick S. Wermuth*
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Quinn B. Ritter
Florida Bar No. 1018135
**KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.**
25 East Pine Street
Orlando, FL 32801
Telephone: (407) 422-2472
fwermuth@kbzlaw.com
qritter@kbzwlaw.com

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111
