UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD W. LUTNICK, et al., <br><br> Defendants. | No. 8:25-cv-02486-WFJ-SDM-RSR |

**INTERVENOR-DEFENDANTS' STATEMENT OF DISPUTED FACTS**

Intervenor-Defendants submit this response to Plaintiffs' Statement of Undisputed Material Facts, Doc. 51 (Statement).

Intervenor-Defendants object, at the outset, that Plaintiffs' Statement is deficient. It is vastly under-inclusive—Plaintiffs rely on many material facts in their Motion that are not included in the Statement. Intervenor-Defendants address some of those facts in Part II below. For many of the facts that are included in the Statement, no record citation is provided. *See* Doc. 51 ¶¶ 5, 8, 9, 13, 14. For others, one or more exhibits are cited—some of which are dozens of pages long—but no pinpoint citation is provided. *Id.* ¶¶ 4, 6, 10. Several of the paragraphs include conclusions of law, not facts. *Id.* ¶¶ 1, 2, 3. And while Plaintiffs seem to imply that these facts are *stipulated*, *id.* at 1, Intervenor-

1

Defendants were not included in any such conferral and have entered no such stipulation.

Under the Court's preferences, these deficiencies standing alone would justify denial of the Motion. *See* Hon. William F. Jung, Preferences: Civil Motions, https://www.flmd.uscourts.gov/judges/william-jung ("Each fact must be supported by a pinpoint citation to the specific part of the record relied upon to support that fact . . . . Failure to submit a statement of undisputed material facts constitutes grounds for denial of the motion."); *Eres v. Progressive Am. Ins. Co.*, No. 8:17-CV-2354-T-17SPF, 2019 WL 1468532, at *3–4 (M.D. Fla. Feb. 14, 2019).

## I. Response to Plaintiffs' Statement of Undisputed Facts

1. Undisputed, although this is a legal conclusion rather than a fact. The meaning and significance of the quoted statutory and constitutional language is disputed as set forth in Intervenor-Defendants' Opposition.

2. Undisputed, although this is a legal conclusion rather than a fact. The meaning and significance of the quoted statutory language is disputed as set forth in Intervenor-Defendants' Opposition.

3. Undisputed that federal law provides for a private cause of action in some circumstances, although this is a legal conclusion rather than a fact. The availability of that cause of action to Plaintiffs is disputed as set forth in Intervenor-Defendants' Opposition.

    4.     Undisputed.

    5.     Disputed. Plaintiffs fail to cite any record evidence to support this assertion in violation of the Court's procedures.

    6.     Undisputed.

    7.     Undisputed based on Exhibit 26. Plaintiffs' Exhibit 8 is inadmissible hearsay that is not proper evidence at summary judgment under Fed. R. Civ. P. 56(c)(2).

    8.     Disputed. Plaintiffs fail to cite any record evidence to support this assertion in violation of the Court's procedures.

    9.     Disputed. Plaintiffs fail to cite any record evidence to support this assertion in violation of the Court's procedures.

    10.     Disputed in part. Undisputed that the term "group quarters" includes college/university dormitories and nursing homes. Disputed that Group Quarters Imputation was used on all group quarters; in fact, it was used on only approximately 2% of group quarters. Pls.' Ex. 26 at 4. Disputed that many group facilities were experiencing lower-than-historical occupancy on April 1, 2020. The cited exhibit does not support that proposition. *See* Pls.' Ex. 6 at 1–2. It says only that "[m]any of the people living in GQs, such as college students, were no longer on-site to complete a paper form," without saying they had permanently relocated. *Id.* at 2. It also says that for other group quarters, "Census Bureau staff couldn't visit to carry out the in-person and paper-based

3

options in facilities such as nursing homes or prisons because of pandemic-related restrictions." *Id.*

11. Disputed in part. Undisputed that the Census Bureau used "Differential Privacy" on *some* data related to the 2020 Census. Disputed that "Differential Privacy" was used on the state-level population figures used to determine interstate apportionment of congressional representation. *See* Pls.' Ex. 23 at 1 ("State population counts used to apportion seats in the U.S. House of Representatives are total counts of residents and overseas residents for each state. Neither differential privacy nor any other form of statistical noise is applied to those counts.").

12. Undisputed based on Plaintiffs' Exhibit 23. Plaintiffs' Exhibits 9 and 10 are scholarly articles and therefore not admissible and not properly considered under Fed. R. Civ. P. 56(c)(2) unless relied upon by an expert witness. Plaintiffs have disclosed no such witness.

13. Disputed. Plaintiffs fail to cite any record evidence to support this assertion in violation of the Court's procedures.

14. Disputed. Plaintiffs fail to cite any record evidence to support this assertion in violation of the Court's procedures.

15. Disputed in part. Undisputed that the Census Bureau's 2020 Post-Enumeration Survey estimated undercounts for some states and regions and overcounts for others. Pls.' Exhibit 25 at 11. Disputed that this result reflects

4

"errors in the 2020 census count," which is unsupported by the cited evidence. Disputed that the Post Enumeration Survey suggests that an undercount was caused by any particular methodology. *See* Pls.' Ex. 17 at 3 ("While the 2020 Post-Enumeration Survey can estimate undercounts and overcounts in the census, PES data cannot answer why a particular state may have experienced one.").

## II. Response to Facts in Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motion for Summary Judgment, ECF No. 50 (MSJ) incorporates many factual assertions that are necessary to Plaintiffs' theory of the case, but do not appear in Plaintiffs' Statement of Undisputed Material Facts and are not supported by the Record. Intervenor-Defendants have not attempted to identify every such fact, but they address several of the most important ones here.

1. "The combined use of GQCIP and Differential Privacy resulted in systematic population miscounting in the 2020 census." MSJ at 2.

Disputed. Plaintiffs cite no record evidence showing that Group Quarters Imputation and Differential Privacy caused "systematic population miscounting." Plaintiffs' Exhibit 17, cited in the next sentence, describes evidence of an undercount in Florida but expressly cautions that the cause of the undercount is unknown. Pls.' Ex. 17 at 3. Group Quarters Imputation and Differential Privacy could not have caused a statewide undercount, much less

5

one of this magnitude. Group Quarters Imputation *added* 16,500 people to Florida's count. Pls.' Ex. 26 at 25. And Differential Privacy was not used on total State population counts. Pls.' Ex. 23 at 1.

> 2. "But for the use of these methods in the 2020 census, Florida would have gained two additional House seats and Electoral College votes. Exhibit 17; Exhibit 18 at 6." MSJ at 2.

Disputed. Plaintiffs' Exhibit 17 describes the results of the Post-Enumeration Survey but does not say that any under- or overcounts are attributable to Group Quarters Imputation or Differential Privacy; it instead cautions that "PES data cannot answer why a particular state may have experienced" an under- or overcount. Pls.' Ex. 17 at 3. Plaintiffs' Exhibit 18 describes the apportionment effects of the estimated under- and overcounts from the Post Enumeration Survey but does not say those effects are due to Differential Privacy or Group Quarters Imputation. In fact, Differential Privacy and Group Quarters Imputation had no effect on apportionment of House seats and Electoral College votes to Florida. Differential Privacy was not used on apportionment figures, Pls.' Ex. 23 at 1, and Group Quarters Imputation affected too few people to change apportionment, McCartan Decl. ¶¶ 5, 31–34.

> 3. "Due to COVID-19 pandemic closures, virtually all colleges and universities had closed their dormitories and sent students home by the end of March 2020. On April 1, 2020—the legally mandated census day—these dormitories stood empty. See 13 U.S.C. § 141(a); see also Exhibit 1." MSJ at 19.

6

Disputed. This asserted fact is not supported by any citation to record evidence. College dormitories make up only a portion of the total number of group quarters, which also include other group living arrangements. Pls.' Ex. 26 at 20. Group Quarters Imputation was not used on the vast majority of group quarters, including the vast majority of college dormitories. *Id.* Plaintiffs cite no evidence that the limited number of college dormitories on which Group Quarters Imputation was used in fact "stood empty" on April 1, 2020, much less that those facilities were no longer the usual residence of the students who lived there before the COVID-19 pandemic.

### III.   Statement of Additional Material Facts

1. Differential Privacy was not applied to the state population counts used to apportion seats in the U.S. House of Representatives. Pls.' Ex. 23 at 1.

2. The statistical "noise" added to other population figures by Differential Privacy is small relative to overall population figures. McCartan Decl. ¶¶ 11–18.

3. Group Quarters Imputation added 16,500 people to Florida's total population—the second-most of any state—and 169,000 nationwide. Pls.' Ex. 26 at 21–22.

4. The effect of Group Quarters Imputation on population numbers was too small to affect interstate apportionment of seats in the U.S. House of

Representatives. The apportionment would have been the same if Group Quarters Imputation was not used. McCartan Decl. ¶¶ 31–34.

5. Group Quarters Imputation was used on just 2% of all group quarters in the United States. Pls.' Ex. 26 at 4.

6. The Census Bureau used Group Quarters Imputation only where its data showed a population count of zero despite evidence that the group quarters was occupied, and only after other efforts to determine the population count directly failed. Pls.' Ex. 26 at 8–10.

7. The Census Bureau took steps to prevent any potential double-counting by asking each household about individuals who "usually live or stay somewhere else," including college students who might temporarily have been living at home on Census Day, and counting any such residents according to the Bureau's "residence criteria." Defs.' Ex. B.

Respectfully submitted this 19th day of December, 2025.

| | |
|---|---|
| */s/ David R. Fox* | */s/ Frederick S. Wermuth* |
| David R. Fox* (Lead Counsel) | Frederick Wermuth |
| Richard A. Medina* | Florida Bar No. 0184111 |
| **ELIAS LAW GROUP LLP** | Quinn B. Ritter |
| 250 Massachusetts Ave NW, Suite 400 | Florida Bar No. 1018135 |
| Washington, D.C. 20001 | **KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.** |
| Telephone: (202) 968-4490 | 25 East Pine Street |
| dfox@elias.law | Orlando, FL 32801 |
| rmedina@elias.law | Telephone: (407) 422-2472 |
| | fwermuth@kbzlaw.com |
| *\*Admitted Pro Hac Vice* | qritter@kbzwlaw.com |

*Counsel for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar. No. 0184111
