IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> HOWARD W. LUTNICK, Secretary of Commerce, *in his official capacity*, *et al.*, <br><br> *Defendants*. | Case No. 8:25-cv-2486-WFJ-SDM-RSR |

## DEFENDANTS' STATEMENT OF DISPUTED FACTS

Defendants submit this response to Plaintiffs' Statement of Undisputed Material Facts ("Statement"), (Doc. 51). Defendants note, however, that Plaintiffs' Statement is facially deficient in several ways. First, Plaintiffs rely on a large number of material facts in support of their Motion to Dismiss ("Motion"), (Doc. 50) that are not found in their Statement. Additionally, for paragraphs five, eight, nine, thirteen, and fourteen of their Statement, Plaintiffs provide no record citation. For these deficiencies, and the reasons identified in Defendants' Response Brief, the Court would be justified in denying the Motion.

### I.   Response to Plaintiffs' Statement of Undisputed Facts

1.   Denied, except that the U.S. Constitution, art. 1, § 2, cl. 3, provides, "Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers,

which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct." The Census Act, at 13 U.S.C. § 141(a), provides, "The Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year, which date shall be known as the 'decennial census date', in such form and content as he may determine." Pursuant to 13 U.S.C. § 2, the Bureau of the Census is "an agency within, and under the jurisdiction of, the Department of Commerce."

2. Denied, except that the Census Act provides, "The Secretary shall, in the year 1980 and every 10 years thereafter, take a decennial census of population as of the first day of April of such year." 13 U.S.C. § 141(a).

3. Denied, except that Pub. L. No. 105-119, § 209(b) (1997) provides that "Any person aggrieved by the use of any statistical method in violation of the Constitution or any provision of law (other than this Act), in connection with the 2000 or any later decennial census, to determine the population for purposes of the apportionment or redistricting of Members in Congress, may in a civil action obtain declaratory, injunctive, and any other appropriate relief against the use of such method."

4. Denied, except that while the Census Bureau had long used different forms of imputation involving statistical methodologies in the decennial census, *see generally Utah v. Evans*, 537 U.S. 452 (2002), the unique features of the 2020 COVID-19 pandemic led to a new use of imputation for unresolved group quarters. *See* Doc. 50-25; Doc. 50-27. Since the 1990 Census, the Census Bureau had also added "'noise'—or variations from the actual count—to the collected data." *See* Understanding Differential Privacy, U.S. Census Bureau, (last revised Feb. 29, 2024), https://www.census.gov/programs-surveys/decennial-census/decade/2020/planning-management/process/disclosure-avoidance/differential-privacy.html. The 2020 Census was thus not the first use of noise infusion as a statistical methodology in a decennial census, although it was the first time that the differential privacy accounting framework was used to implement disclosure avoidance through noise infusion. *See* Disclosure Avoidance Techniques Used for the 1970 through 2010 Decennial Censuses of Population and Housing, Laura McKenna, U.S. Census Bureau at 1 (Nov. 2018), available at https://www2.census.gov/ces/wp/2018/CES-WP-18-47.pdf ("The 2020 Census will be the first census protected by a formally private disclosure avoidance system based on differentially privacy methods.").

5. Denied, except that while the Census Bureau had long used different forms of imputation involving statistical methodologies in the decennial census, *see generally Utah v. Evans*, 537 U.S. 452 (2002), the unique features of the 2020 COVID-19 pandemic led to a new use of imputation for unresolved group quarters. *See* Doc.

50-25; Doc. 50-27. Since the 1990 Census, the Census Bureau had also added "'noise'—or variations from the actual count—to the collected data." *See* Understanding Differential Privacy, U.S. Census Bureau, (last revised Feb. 29, 2024), https://www.census.gov/programs-surveys/decennial-census/decade/2020/planning-management/process/disclosure-avoidance/differential-privacy.html. The 2020 Census was thus not the first use of noise infusion as a statistical methodology in a decennial census, although it was the first time that the differential privacy accounting framework was used to implement disclosure avoidance through noise infusion. *See* Disclosure Avoidance Techniques Used for the 1970 through 2010 Decennial Censuses of Population and Housing, Laura McKenna, U.S. Census Bureau at 1 (Nov. 2018), available at https://www2.census.gov/ces/wp/2018/CES-WP-18-47.pdf ("The 2020 Census will be the first census protected by a formally private disclosure avoidance system based on differentially privacy methods."). Defendants also object to Plaintiffs' failure to cite any evidence in the record in support of this assertion of fact, in violation of the Court's procedures.

6. Admitted.

7. Denied, except that "[t]he [group quarter] count imputation procedure was conducted in February 2021." *See* Doc. 50-27 at 6.

8. Denied, except that the Census Bureau used ratio imputation to impute a population for some unresolved group quarters. *See* Doc. 50-27 at 14. For example, some unresolved group quarters provided information about their expected population

4

as of April 1 during the advance contact. *See id.* at 13–14. To account for potential inaccuracies in this advance reporting, the Census Bureau multiplied this expected population by a ratio that reflected the difference between this advanced reporting on expected population and the actual enumerated population for resolved group quarters. *See id.* at 14. In addition, for a small set of unresolved group quarters, the Census Bureau utilized percentile imputation when none of the four auxiliary variables used for ratio imputation were available. *See id.* at 14–15. Defendants also object to Plaintiffs' failure to cite any evidence in the record in support of this assertion of fact, in violation of the Court's procedures.

9. Denied, except that the Group Quarters Count Imputation ("GQCIP") imputed 169,000 people to the unresolved group quarters. *See* (Doc. 50-27 at 24). Defendants also object to Plaintiffs' failure to cite any evidence in the record in support of this assertion of fact, in violation of the Court's procedures.

10. Denied. "[M]any of the people normally living at [group quarter]s around Census Day had moved out because of the pandemic or for other reasons. It should be noted that, during the GQE, the Census Bureau made it clear that the appropriate reference day for the collection was still April 1, 2020 (with minor exceptions for a few specified types of [group quarter]s, such as those in Service-Based Enumeration). For [group quarter]s that closed before April 1 because of the pandemic, the Census Bureau requested the preclosure data." *See* (Doc. 50-27 at 8). However, as noted in Defendants' brief, Response at 4, in 2020 the Census Bureau

was required to count people at their usual place of residence, not the place to which they were temporarily evacuated.

11. Admitted, except that Differential Privacy was not used on state apportionment counts. *See* (Doc. 50-24 at 2).

12. Admitted, based on Plaintiffs' Exhibit 23 (Doc. 50-24).

13. Denied. "Differential privacy is not applied to the apportionment count." *See* (Doc. 50-24 at 2). The TopDown Algorithm employed to implement Differential Privacy for the 2020 Census worked by injecting noise, or "adding or subtracting small amounts at random," from different elements of the 2020 Census Redistricting Data, including the population of census blocks. *See* Disclosure Avoidance and the 2020 Census: How the TopDown Algorithm Works, U.S. Census Bureau at 3 (Mar. 2023), available at https://www2.census.gov/library/publications/decennial/2020/census-briefs/c2020br-04.pdf. Defendants also object to Plaintiffs' failure to cite any evidence in the record in support of this assertion of fact, in violation of the Court's procedures.

14. Denied, except that the 2020 Post Enumeration Survey Report, which did not contain information about potential undercounts at the county level, estimated a net undercount for Florida. *See* (Doc. 50-26 at 12). Defendants also object to Plaintiffs' failure to cite any evidence in the record in support of this assertion of fact, in violation of the Court's procedures.

15. Denied, except that the 2020 Post Enumeration Survey was designed to evaluate the coverage of the 2020 Census, including by identifying potential net coverage errors. *See* (Doc. 50-26 at 9). The net coverage errors estimated by the 2020

Post Enumeration Survey were the result of statistical analysis, but do not indicate the source of this potential error can be traced to GQCIP or Differential Privacy. *See* (Doc. 50-26 at 12).

## II. Defendants' Statement of Additional Material Facts

1. Differential Privacy was not applied to the state apportionment counts used to assign seats in the U.S. House of Representatives. *See* (Doc. 50-24 at 2).

2. GQCIP added 169,000 to the national population. *See* (Doc. 50-27 at 24).

3. GQCIP added 16,500 people to the population of Florida, more than all but one other state. *See id.* at 25–27.

4. GQCIP was used on 5,500 out of 267,000 group quarters facilities across the United States. *See id.* at 16.

Dated: December 19, 2025   Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Branch Director

/s/ *Kevin K. Bell*
KEVIN K. BELL
(GA Bar No. 967210)
KATHRYN L. ALKIRE
(FL Bar No. 1050146)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW

Washington, DC 20005  
Phone: (202) 305-8613  
E-mail: Kevin.K.Bell@usdoj.gov

*Lead Counsel for Defendants*