UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNIVERSITY OF SOUTH FLORIDA COLLEGE REPUBLICANS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD W. LUTNICK, et al., <br><br> Defendants. | No. 8:25-cv-02486-WFJ-SDM-RSR |

**INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

The Court should dismiss this case. Plaintiffs fail to allege facts supporting their standing to sue, because their factual allegations combined with judicially noticeable facts leave them without an injury-in-fact that is redressable by relief against the Census Bureau. The challenged procedures did not affect interstate apportionment. Plaintiffs allege no factual basis for concluding that the challenged procedures left their particular districts overpopulated relative to others in Florida, and even if they had, the Census Bureau did not draw those districts and could not be ordered to redraw them. That leaves Congressman Donalds, who fails to allege that he actually uses the detailed census data he says he has been deprived of, and who has no right to invoke an informational injury belonging to the whole House of Representatives in any event.

Plaintiffs also fail to state a claim on the merits. Whether Differential Privacy (DP) and Group Quarters Imputation (GQI) as described by Plaintiffs' non-conclusory factual allegations violated federal law and the U.S. Constitution is a question of law that the Court can resolve on a motion to dismiss. And the legal answer is clear—they are lawful. Plaintiffs abandon any claim that the challenged procedures violate Section 209 by failing to respond to Intervenors' arguments about that provision. Their challenges under the Census Clause and 13 U.S.C. § 195 run headlong into *Utah v. Evans*, 536 U.S. 452 (2002), among other problems. And regardless, their claims are untimely

and barred by laches, because they challenge decisions and census data that was released more than four years before they sued, on which states and voters around the country have relied ever since.

The Court should grant the motion and dismiss this case.

## ARGUMENT

### I. Plaintiffs lack standing.

#### A. Congressman Donalds

Plaintiffs argue that Congressman Donalds has standing because "Congress intended for census-related matters to be treated differently" from other cases. Doc. 65 at 3. But Congress cannot "relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," an inherently constitutional question. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Courts therefore "cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n.2 (11th Cir. 2020)). And for an informational injury to be concrete requires alleging "'downstream consequences' from failing to receive the required information." *Id.* at 442 (quoting *Trichell*, 964 F.3d at 1004).

*National Urban League v. Ross*, 508 F. Supp. 3d 663 (N.D. Cal. 2020), and *New York v. U.S. Department of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019), predate *TransUnion* and do not address this now-settled requirement.

But both cases also included allegations of concrete downstream injury that are not present here. *See Nat'l Urban League*, 508 F. Supp. 3d at 690 (describing plaintiffs' concrete uses of census data); *New York*, 351 F. Supp. 3d at 610 (describing how degradation of census data would harm plaintiff's allocation of "educational and public health resources"). There are no such allegations here. The assertion that Rep. Donalds "has voted on legislation affecting" programs that rely on Census data, Doc. 65 at 4, does not appear in the Second Amended Complaint. Even if it did, it does not show that Rep. Donalds *himself* used census data in deciding how to vote. And any such injury would, in any event, be an "institutional injury" to Congress as a whole that Rep. Donalds lacks standing to pursue. *Raines v. Byrd*, 521 U.S. 811, 829 (1997); *see* Doc. 69 at 9.[1]

### B. Other Plaintiffs

The other Plaintiffs also lack standing. Their allegation that Florida lost representation and federal funds due to DP and GQI is a mere legal conclusion, and it is not a plausible one. Plaintiffs have no answer to the judicially noticeable facts that (1) DP was not applied to interstate apportionment data and (2) GQI *added* 16,500 people to the population of Florida, the second most

---

[1] That Congress created a *cause of action* for Rep. Donalds under Section 209 is not the same as authorizing him to "represent" Congress in this case. *Raines*, 521 U.S. at 829. *Contra* Doc. 73 at 2–3. Congress cannot confer Article III standing merely by creating a cause of action. *TransUnion*, 594 U.S. at 426.

of any state. "A court need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts." *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla 2013); *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiffs' argument that they were harmed by "inaccurate intra-state redistricting" because of DP and GQI also fails. Doc. 65 at 5. "[O]nly those persons domiciled in under-represented voting districts" have standing to bring an intra-state vote dilution claim. *Alabama v. U.S. Dept. of Com.*, 546 F. Supp. 3d. 1057, 1070 (M.D. Ala. 2021) (citation modified). Plaintiffs do not even attempt to allege that their districts were overpopulated, and their Opposition fails to address this issue altogether, waiving any response.

Finally, Plaintiffs' claims regarding the 2030 Census are speculative and unripe—in an Article III sense, not just a prudential sense. *See Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (noting that absent a "case or controversy" under Article III, prudential considerations are irrelevant to the ripeness analysis); *Suffolk Constr. Co., Inc. v. Auto-Owners Ins. Co.*, No. 8:19-cv-2878-T-23AEP, 2019 WL 10786020, at *1 (M.D. Fla. Dec. 23, 2019) ("[T]he 'case or controversy' clause of Article III prevents a federal court's exercising jurisdiction over an unripe claim."). Congress cannot confer Article III jurisdiction absent a non-speculative injury in fact. *See TransUnion*, 594 U.S. at 426. And Plaintiffs offer no facts to support their speculation that

the Bureau "will likely use those methods again in 2030," Doc. 65 at 8—in fact, they argued the reverse in opposing intervention. Doc. 45 at 9.

## II. Plaintiffs fail to state a claim.

### A. GQI is lawful.

*Evans* forecloses Plaintiffs' claim that GQI is "sampling" under Section 195. Like the "hot deck" imputation approved in *Evans*, GQI was applied to "fill in *missing* data" "[a]fter first attempting to count the total population." Doc. 65 at 10–11; *see* Doc. 50-27 at 8–9. In such instances, *Evans* does not require the Bureau "to disregard the information it has, using a figure of zero." 536 U.S. at 478. Rather, the Bureau may "use imputation in an effort to achieve greater accuracy" when either "missing or confused" data otherwise prevents it from doing so. *Id.* at 458, 478.

Plaintiffs have no answer to this. They argue that *Evans* did not specifically address GQI, Doc. 65 at 9–10, but that is beside the point. *Evans* set forth a legal test to govern this claim, and Plaintiffs have no argument that GQI fails that test. And Plaintiffs' argument that hot deck imputation differed in "scope" and "magnitude" is only correct in so far as GQI had *less* influence on the overall count—hot deck imputation "increased the final year 2000 count by about 1.2 million people" 536 U.S. at 458. GQI added only 169,000 individuals nationwide. Doc. 50-27 at 25–26.

Plaintiffs also have no answer to *Evans*'s holding that the Census Clause

6

is satisfied so long as "the Census Bureau exhausted its efforts to reach each individual," and does not "substitute . . . statistical methods for efforts to reach households and enumerate each individual," but that conclusion forecloses plaintiffs' constitutional challenge to GQI. 536 U.S. at 477. The Bureau applied GQI only to facilities that it otherwise knew to be occupied, after exhausting efforts to contact those facilities. Doc. 50-27 at 8–9; Doc. 43 ¶ 46. Plaintiffs' contrary conclusory allegation contradicts this judicially noticeable fact, and cannot be accepted as true. *See Chapman*, 930 F. Supp. 2d at 1323.

Finally, GQI does not violate Section 141 because it counts individuals at their "usual place of residence" as of Census Day. Plaintiffs' argument that "as of" means "on"—setting aside that it ignores Congress's word choice—is irrelevant. Section 141 is satisfied when the Census counts individuals where they *reside* on Census Day—that is, "where a person lives and sleeps most of the time," *Kostick v. Nago*, 878 F. Supp. 2d 1124, 1129 (D. Haw. May 22, 2012)—not where they are literally, physically present. There is nothing novel about that proposition—and even if there were, this issue would be no less amenable to resolution on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B. Differential Privacy was not used for apportionment.

Plaintiffs do not dispute the judicially noticeable fact that DP was not used on the state-level population figures that determined the apportionment

7

of congressional seats. Doc. 60 at 7 n.2. It therefore cannot have violated the "actual Enumeration" provision of the Census Clause or Section 195, because both provisions govern only interstate apportionment, not other uses of census data. Plaintiffs do not respond as to Section 195 and have therefore abandoned their Section 195 challenge to DP. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta* (CAMP), 219 F.3d 1301, 1326 (11th Cir. 2000). They cite *Wesberry v. Sanders*, 376 U.S. 1 (1964), for the proposition that the one-person, one-vote requirement for legislative districts derives from the Census Clause in Article I, Section 2. But that requires only that *states* "make a good-faith effort to achieve precise mathematical equality." *Kirkpatrick v. Preisler*, 394 U.S. 526, 530–31 (1969). No state official is a defendant here. This "does not translate into a requirement that the Federal Government conduct a census that is as accurate as possible." *Wisconsin v. City of New York*, 517 U.S. 1, 17 (1996).

### C. Plaintiffs have abandoned their claims under Section 209.

Plaintiffs entirely fail to respond to Intervenors' argument that Plaintiffs' Count V fails because Section 209 does not "prohibit" anything. Doc. 60 at 20–21. Plaintiffs have therefore abandoned that claim, and the Court should dismiss it. *See CAMP*, 219 F.3d at 1326; *Collins v. BAC Home Loans*, No. 2:12-cv-3721-LSC, 2013 WL 2249123, at *6 (N.D. Ala. May 21, 2013).

### III. Plaintiffs' claims are untimely.

The four-year statute of limitations applies and bars Plaintiffs' claims. The action they challenge—issuing a 2020 Census report that relied on allegedly unlawful methods—was complete, at the latest, when the Bureau released redistricting data in August 2021. This is not a challenge to "ongoing enforcement" of an allegedly "unconstitutional" statute. *Does v. Whitmer*, 751 F. Supp. 3d 761, 838 (E.D. Mich. 2024). Defendants have done nothing of relevance since then. And Plaintiffs did not need to wait until Florida enacted new districts or the 118th Congress was seated. Doc. 65 at 17. A plaintiff "need not wait for an injury to occur" to sue, "so long as the alleged injury is imminent or real and immediate and not merely conjectural or hypothetical." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) (citation modified).

Plaintiffs' claims are alternatively barred by laches because their delay will cause significant electoral confusion and disruption. *E.g.*, *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1355 (S.D. Fla. 1999) (three-judge court). Plaintiffs make no attempt to justify their inexcusable delay, beyond their misguided argument that they sued within the statute of limitations. And they are simply wrong to suggest that the deterioration of evidence is the only form of prejudice that courts recognize when applying laches. *See id.*

## CONCLUSION

The Court should grant Intervenors' Motion to Dismiss.

Dated: December 24, 2025                    Respectfully submitted,

*/s/ David R. Fox*                          */s/ Frederick S. Wermuth*
David R. Fox*                               Frederick Wermuth (Lead Counsel)
Richard A. Medina*                          Fla. Bar No. 0184111
Tori Shaw*                                  Quinn B. Ritter
**ELIAS LAW GROUP LLP**                     Fla. Bar. 1018135
250 Massachusetts Ave NW,                   **KING, BLACKWELL, ZEHNDER**
Suite 400                                   **& WERMUTH, P.A.**
Washington, D.C.                            25 East Pine Street
Telephone: (202) 968-4490                   Orlando, FL 32801
dfox@elias.law                              Telephone: (407) 422-2472
rmedina@elias.law                           fwermuth@kbzlaw.com
tshaw@elias.law

*Special admission

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

>                           */s/ Frederick S. Wermuth*
>                           Frederick S. Wermuth
>                           Florida Bar. No. 0184111